UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY D. AMAKER,

                Plaintiff,

          -against-

K. GERBING, et al.

                Defendants.

**MEMORANDUM
OPINION AND ORDER**

17-CV-03520 (PMH)

PHILIP M. HALPERN, United States District Judge:

Anthony D. Amaker ("Plaintiff"), proceeding *pro se*, asserts claims under 42 U.S.C. § 1983 for violations of his rights under the First and Fourteenth Amendments, and invokes the Americans with Disabilities Act ("ADA"), against K. Gerbing ("Gerbing"), P. Early ("Early"), S. Roberts ("Roberts"), S. Bennett ("Bennett"), P. Wolff ("Wolff"), Dr. Gusman ("Gusman"), C.O. J. Rio ("Rio"), D. Venetozzi ("Venettozzi"), C.O. K. Barber ("Barber"), Dep. Comm. Anthony J. Annucci ("Annucci"), Joseph Bellnier ("Bellnier"), and Dep. Comm. Jefferey McCoy ("McKoy," and collectively, "Defendants").[1]

Gerbing, Wolff, Venettozzi, Annucci, Bellnier, and McKoy (the "Represented Defendants") filed a motion to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on July 2, 2021. (Doc. 40; Doc. 41, "Def. Br."). Plaintiff's opposition was due on August 6, 2021. (Doc. 38). The docket indicates that a copy of the Court's Order setting the briefing schedule was transmitted electronically to Plaintiff contemporaneously with its entry. (*See* Doc. 16 (Plaintiff's consent to electronic service)). On July 2, 2021, the Represented Defendants filed a declaration of service indicating service of the motion papers and

---

[1] The Court's references to "Venettozzi" and "McKoy" differ from Plaintiff's pleadings with respect to the spelling of those individuals' names so as to correct the spelling as indicated in the Represented Defendants' briefing.

other associated documents on Plaintiff. (Doc. 40-1). Plaintiff did not file opposition papers. On August 23, 2021, the Court *sua sponte* extended Plaintiff's time to oppose the motion to September 17, 2021, warned Plaintiff that no further extensions would be granted, and cautioned that if Plaintiff failed to file opposition by September 17, 2021, the motion would be deemed fully submitted and unopposed. (Doc. 43). Plaintiff thereafter timely sought two extensions of the time to oppose the Represented Defendants' motion, both of which the Court granted, extending Plaintiff's time to oppose to November 5, 2021. (Docs. 44-47). On December 3, 2021, almost one month after the deadline expired, Plaintiff sought another extension of time to file his opposition. (Docs. 49, 50). The Court granted Plaintiff's request, warned Plaintiff that no further extensions would be granted, and cautioned that if Plaintiff failed to file opposition by January 20, 2022, the motion would be deemed fully submitted and unopposed. (Doc. 51). Plaintiff did not file opposition papers.

On February 11, 2022, the Court received Plaintiff's motion dated January 31, 2022, seeking a fifth extension of time to oppose the Represented Defendants' motion. (Docs. 53, 54). Because the Court had explicitly warned Plaintiff of the consequences of failure to timely file his opposition and that no further extensions would be granted; and because the application for a fifth extension was made well after the expiration of the deadline to file opposition, the Court DENIES the request (Doc. 53). Accordingly, the Court deems the Represented Defendants' motion fully submitted and ripe for adjudication.

For the reasons set forth below, the Represented Defendants' motion is GRANTED.[2]

---

[2] There is no indication that Early, Roberts, Bennett, Gusman, Rio, and Barber have been served. Nevertheless, the Court considers the viability of federal claims for relief against them as well by operation of 28 U.S.C. § 1915(e)(2)(B). *See Williams v. Novoa*, No. 19-CV-11545, 2022 WL 161479, at *10-12 (S.D.N.Y. Jan. 18, 2022).

## BACKGROUND

Plaintiff was incarcerated at Bare Hill Correctional Facility ("Bare Hill") when he commenced the instant action in 2017 alleging claims arising at Bare Hill and Otisville Correctional Facility ("Otisville"). (Doc. 2). Because Plaintiff was disqualified under 28 U.S.C. § 1915(g) from proceeding *in forma pauperis* as a prisoner, the Court dismissed this action without prejudice to reinstatement following payment of the filing fee. (Doc. 4). On August 26, 2019, after Plaintiff paid the filing fee and filed a motion to reinstate, Judge Stanton issued an Order reopening the action for good cause shown. (Doc. 12). On October 3, 2019, Judge Stanton issued an Order severing Plaintiff's claims arising at Bare Hill and transferring those claims to the United States District Court for the Northern District of New York. (Doc. 13).[3]

On October 17, 2019, Judge Stanton, after screening Plaintiff's Complaint under 28 U.S.C. § 1915A(a), issued an Order to Amend, which carefully and thoroughly discussed the deficiencies in Plaintiff's pleading. (Doc. 14, "Prior Ord.").[4] The Order to Amend warned that if Plaintiff failed to file an amended complaint in compliance with the standards described therein within 60 days of the date of the Order, absent good cause, the Complaint would be dismissed for failure to state a claim upon which relief may be granted. (*Id.* at 18). Plaintiff thereafter sought and was granted additional time to file an amended complaint. (Docs. 15, 17).

On January 13, 2020, Plaintiff filed the Amended Complaint. (Doc. 18, "Am. Compl.").[5] The allegations in the Amended Complaint are nearly identical to the original Complaint. In fact,

---

[3] The severed claims were opened there and have been proceeding under docket number 19-CV-01253 (N.D.N.Y.).

[4] The Order to Amend is available on commercial databases. *See Amaker v. Gerbing*, No. 17-CV-03520, 2019 WL 5260762 (S.D.N.Y. Oct. 17, 2019). However, for ease of reference, the Court cites herein the copy of the Order to Amend filed on the docket.

[5] Citations to the Amended Complaint correspond to the pagination generated by ECF.

there are but five new allegations in the Amended Complaint; otherwise, the pleadings are identical. The Court thus assumes the parties' familiarity with the factual allegations as laid out in the Order to Amend and incorporates any additional factual allegations where appropriate *infra*.

## STANDARD OF REVIEW

I.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a Rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.   <u>Federal Rule of Civil Procedure 12(b)(6)</u>

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d] must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429

U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss (as is the case here with respect to the Represented Defendants' motion), "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of

the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the Amended Complaint even without the benefit of formal opposition to the motion.

## ANALYSIS

I.    Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

The Court, as guided by precedent, turns first to the Represented Defendants' arguments regarding the lack of subject-matter jurisdiction and dismissal mandated under Rule 12(b)(1).

A.    Eleventh Amendment Immunity

Insofar as Plaintiff seeks relief under 42 U.S.C. § 1983, the Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at *2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (alteration in original)). To that point, it is well-settled that "New York has not waived its sovereign immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct.

17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment."). "[C]laims for damages under Title II of the ADA can proceed . . . when a Plaintiff states a claim for a Fourteenth Amendment violation, . . . such as where the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." (Prior Ord. at 12 (internal citations omitted)).

Consequently, because the Eleventh Amendment deprives this Court of subject-matter jurisdiction, the claims for relief under 42 U.S.C. § 1983 for violation of the First Amendment are dismissed under Rule 12(b)(1) to the extent they seek relief against Defendants in their official capacities. This result does not affect the 42 U.S.C. § 1983 claims against them in their individual capacities, or to the extent Plaintiff states a claim for a Fourteenth Amendment violation giving rise to a claim under the ADA, which the Court considers *infra*.

II.   Rule 12(b)(6): Failure to State a Claim Under § 1983

Plaintiff brings claims under 42 U.S.C. § 1983. That section provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). The alleged violations here stem principally from the First and Fourteenth Amendments.

8

A. <u>Prerequisite of Personal Involvement</u>

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). The Amended Complaint fails to implicate Annucci, Bellnier, McKoy, and Venettozzi in any alleged constitutional violation. The Amended Complaint also fails to implicate any of the named Defendants in a purported violation of Plaintiff's First Amendment rights to freedom of religion.

With respect to Annucci, Bellnier, and McKoy, the Amended Complaint is devoid of any allegations that these individuals were personally involved in violating Plaintiff's rights. Other than naming them as Defendants, there are no factual allegations found against them in the Amended Complaint. As to Venettozzi, the only allegation against him is that Plaintiff appealed the disciplinary determination to Venettozzi on the ground that Plaintiff was denied witnesses and documents, but the appeal was denied.[6] (Am. Compl. at 14). This allegation is insufficient to establish personal involvement. *Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *5 (S.D.N.Y. Nov. 19, 2021) (dismissing claims alleged against Venettozzi for lack of personal involvement on the grounds that, *inter alia*, "review and affirmation of the disposition of

---

[6] Even if Plaintiff's allegations sufficiently alleged personal involvement by these Defendants, there is no underlying constitutional violation that proceeds into discovery. (*See* discussion *infra*).

Plaintiff's disciplinary hearing is distinct from the alleged underlying constitutional deprivation." (citing *Ortiz v. Russo*, No. 13-CV-05317, 2015 WL 1427247, at *14 (S.D.N.Y. Mar. 27, 2015))). Any claims for relief pressed against Annucci, Bellnier, McKoy, and Venettozzi are, accordingly, dismissed for lack of personal involvement.

The Amended Complaint is devoid of any allegations concerning any Defendant's involvement in a First Amendment denial of freedom of religion. The sole, conclusory allegation that Plaintiff's First Amendment rights were violated "during the transit between Fishkill C.F. and Bare Hill C.F." by being "denied two days of fasting meals and Sahor bags" (Am. Compl. at 17) does not implicate any Defendants named in this action. Accordingly, any such First Amendment claim pressed against Defendants is dismissed for failure to allege personal involvement in the alleged constitutional violation.

B. <u>Claims for Relief Under the Fourteenth Amendment</u>

Reading the Amended Complaint with the liberality required for *pro se* pleadings, Plaintiff appears to allege claims under the Fourteenth Amendment for discrimination based on disability and race and to enforce his procedural due process rights in connection with a disciplinary proceeding at Otisville.

1. <u>Discrimination Based on Disability and Race</u>

The Order to Amend thoroughly discussed the standards applicable to Plaintiff's claims of discrimination based upon his disability and race, and applied those legal standards to the allegations in the original Complaint when it determined that Plaintiff failed to adequately state a claim for relief. (Prior Ord. at 7-11). Plaintiff, in the Amended Complaint, added only two allegations relevant to those claims in his effort to cure the deficiencies cited by Judge Stanton.

As to his claim of disability discrimination, Plaintiff added the allegation that the policy of limiting bus passes was "a violation to [his] health condition," in that he worked in the gym as a recreation aide and was therefore unable to use to the bus to get to his "work assignment, commissary, yard, gym, religious services, school, counselor, visit and package room." (Am. Compl. at 5). However, aside from general allegations that other prisoners of a different race were not given limitations on bus passes, Plaintiff fails to establish how he was treated differently than others similarly situated *and* as a result of intentional or purposeful discrimination due to a disability. Moreover, these additional allegations still do not negate the policy's rational basis nor its relation to the government's legitimate interests. The allegations, therefore, remain "insufficient to state a claim that the Executive Team's policy of limiting bus passes discriminated against disabled prisoners like him . . . in violation of Plaintiff's right to equal protection of the laws." (Prior Ord. at 9).

With respect to Plaintiff's race-based claim under the Equal Protection Clause, Plaintiff added the allegation that "moving prisoners to the South from the North dorm . . . was only being done to Black Prisoners," that "White prisoners . . . claim[ed Gusman] did not change their bus pass[es]," and that "Black prisoners with medical conditions were not allowed or being removed from the bus pass . . . ." (Am. Compl. at 9-10). These allegations fail to implicate the purported Executive Team members, Gerbing, Early, Roberts, and Bennett, in any intentional discrimination against Plaintiff due to his race. The Amended Complaint, like the original Complaint, simply does not provide enough facts to state a claim that other individuals of different races were similarly situated but treated differently because of their race. As such, the additional allegations remain insufficient to state a plausible claim that Gusman intentionally discriminated against him based on his race. (Prior Ord. 10-11).

Accordingly, Plaintiff's equal protection claims of discrimination on the basis of his disability and race under the Fourteenth Amendment are dismissed.

### 2.  Due Process in Disciplinary Proceedings

The Amended Complaint adds three allegations in support of Plaintiff's claim that Defendants deprived him of due process with respect to the Otisville disciplinary hearing. (*See* Am. Compl. at 12, 14, 17). Specifically, Plaintiff adds that: (1) Bennett, as Hearing Officer, failed to allow Plaintiff to call treating doctors as witnesses to probe his contentions concerning the bus pass limitation which "allowed the misbehavior report to go untested, because Wolff stated Dr. Gusman told him to retrieve my bus pass," (*id*. at 12); (2) Bennett was not impartial because, as Deputy Superintendent of Programs, she "was required to oversee the reasonable accommodation application on the bus issue, . . . and blocked [Plaintiff] from revealing" that she was a witness to the administration's alleged desire to prevent Black prisoners from having bus passes (*id*. 14); and (3) "Plaintiff suffered atypical and significant hardship in the 60 days['] sentence of Special Housing Unit [("SHU")] despite the reduction of 15 days, because he was denied the rights to fair and impartial hearing officer, and the rights to call witnesses to transfer him in retaliation for filing grievances and being on the ILC" (*id*. at 17).

The standards required to plausibly plead the deprivation of a liberty interest were set forth in detail in the Order to Amend. (Prior Ord. at 13-14). Plaintiff's new allegations fail to cure the pleading deficiencies highlighted by Judge Stanton. Plaintiff still fails to allege that he was deprived of a liberty interest; the conclusory allegation that he "suffered atypical and significant hardship in the" 45-day SHU confinement (Am. Compl. at 17), coupled with his other allegations that are identical to those alleged in the original Complaint, are "insufficient to allege that Plaintiff 'endured unusual SHU conditions.'" (Prior Ord. at 14 (quoting *Palmer v. Richards*,

364 F.3d 60, 65-66 (2d Cir. 2004))). Plaintiff's new allegations against Bennett likewise fail to remedy the pleading deficiencies of a due process claim. Were the Court to assume that Plaintiff had sufficiently pled a liberty interest—which he has not—then the same issues plaguing Plaintiff's original Complaint doom his Amended Complaint. (Prior Ord. at 14-15). His new allegations do not demonstrate how the treating doctors' testimony would be relevant to the conduct underlying Plaintiff's disciplinary charges and therefore Plaintiff still has not adequately alleged that he was denied a "reasonable opportunity" to call witnesses. Plaintiff's new allegations against Bennett do not support a claim that he was denied an impartial hearing officer as it appears the disciplinary charges involved Plaintiff's behavior at the clinic.

Accordingly, Plaintiff fails to state a claim under § 1983 for the denial of procedural due process.

C. Claims for Relief Under the First Amendment

Plaintiff, in the Amended Complaint, continues to press a claim for retaliation against Rio but adds only a single allegation that does not cure the deficiencies highlighted in the Order to Amend. (Prior Ord. at 15-16). Plaintiff now also claims that Rio "planted" another inmate's "hotpot" in Plaintiff's belongings. (Am. Compl. at 7). Plaintiff still does not describe the nature of the disciplinary charge lodged against him, for example, or add any factual support for a claim that Rio retaliated against him with the "hotpot" for exercising a constitutional right. For all of the reasons identified in the Order to Amend, Plaintiff's allegations fail to state a claim that Rio filed a false misbehavior report or planted contraband in Plaintiff's belongings in retaliation for Plaintiff's exercise of his constitutional rights. (Prior Ord. at 16).

Moreover, to the extent that Plaintiff alleges that he was retaliated against for filing grievances, (Am. Compl. at 17-18); that his transfer from Otisville was a "retaliatory transfer" to

"be removed from the ILC," (*id.* at 13-14, 16); or that the guilty disposition from Plaintiff's disciplinary hearing was "in retaliation for filing grievances on the reasonable accommodation and seeking the Nation of Islam clerk position" (*id.* at 13), these allegations are speculative, conclusory, and fail to sufficiently state a claim for relief. *See Keesh v. Quick*, No. 19-CV-08942, 2021 WL 639530, at *10 (S.D.N.Y. Feb. 17, 2021) ("Where, as here, the plaintiff alleges the ultimate fact of retaliation in a conclusory and speculative manner, he fails to state a claim for retaliation." (internal citation omitted)).

Plaintiff states in the Amended Complaint, as in the original Complaint, that he "has suffered from the violation of his First Amendment rights by having his religious practice of fasting for Ramadan violated during the transit between Fishkill C.F. and Bare Hill C.F." by being "denied two days of fasting meals and Sahor bags." (Am. Compl. at 17). These claims concerning First Amendment violations at Bare Hill, however, were not properly joined in this action under Federal Rule of Civil Procedure 20(a), were severed and transferred to the Northern District of New York where they are proceeding in a separate action, and only claims arising at Otisville were permitted to proceed in this action. (Doc. 13). Even were the Court to consider the Amended Complaint as raising a First Amendment claim in this action, Plaintiff does not press those allegations against any of Defendants in this action.

Accordingly, Plaintiff's claims under the First Amendment are dismissed.

III.    Rule 12(b)(6): Failure to State a Claim Under the ADA

Plaintiff, through his Amended Complaint, has not cured the deficiencies associated with his claims under the ADA as identified in the Order to Amend. Because Title II of the ADA applies to public entities, any ADA claim against Defendants in their individual capacities must be dismissed. (Prior Ord. at 11 (citing *Green v. City of N.Y.*, 465 F.3d 65, 76 (2d Cir. 2006); 42

U.S.C. § 12131(1))). To the extent Plaintiff presses any claims for injunctive relief under the ADA in connection with the bus passes at Otisville, as discussed in the Order to Amend, they are moot because Plaintiff was released from custody. (Am. Compl. at 2).[7] Although damages are in some circumstances available on an official-capacity claim, here, Plaintiff's claims for damages under the ADA are barred because, as discussed *supra*, Plaintiff has not stated a claim for a Fourteenth Amendment violation showing the purported ADA violation was motivated by either discriminatory animus or ill will due to disability. (Prior Ord. at 12).

Moreover, other than the new allegation that generally references Plaintiff's herniated discs and torn meniscus in both knees (Am. Compl. at 5), Plaintiff fails to show he is even a "qualified individual with a disability" under the ADA. (Prior Ord. at 11 (citing 42 U.S.C. § 12132)); *see also Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004). Plaintiff's ADA claims thus fail as a matter of law and, accordingly, are dismissed.[8]

## <u>CONCLUSION</u>

For the foregoing reasons, the Represented Defendants' motion to dismiss is GRANTED and Plaintiff's claims against them are DISMISSED. Defendants Early, Roberts, Bennett, Gusman, Rio, and Barber are DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[7] A search on the DOCCS inmate lookup website reveals that Plaintiff was released and paroled on February 1, 2018 after serving approximately 28 years for a Murder in the Second Degree conviction, and was discharged from parole on February 1, 2021. *See Simmonds v. Family Dollar Store*, No. 18-CV-01241, 2018 WL 5447046, at *1 n.1 (E.D.N.Y. Oct. 25, 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information."); *see also Jackson v. Sullivan Cty.*, No. 16-CV-03673, 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018) ("Courts in this district have taken judicial notice of information obtained from online inmate tracking services." (internal quotation marks omitted)); *Rosario v. New York City*, No. 12-CV-04795, 2013 WL 2099254, at *1 n.1 (S.D.N.Y. May 15, 2013).

[8] To the extent Plaintiff also presses his claims under Section 504 of the Rehabilitation Act, the allegations are insufficient for the same reasons as his ADA claims. *See Hilton v. Wright*, 928 F. Supp. 2d 530, 556-57 (N.D.N.Y. 2013) ("When brought together, claims under Title II and Section 504 may be treated identically.")

Although "courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its shortcomings, . . . leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies." *Michel v. Orange Cty., New York*, No. 21-CV-09406, 2022 WL 103581, at *3 (S.D.N.Y. Jan. 11, 2022). Moreover, "leave to amend is not necessary when it would be futile." *Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Having been given the opportunity to cure the Complaint's various deficiencies, specifically and fully identified in Judge Stanton's Order to Amend, and having failed to do so, the Court dismisses the claims alleged in the Amended Complaint with prejudice as any amendment would be futile.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motions pending at Docs. 40 and 53 and to close this case.

Dated: White Plains, New York
      February 14, 2022

                               SO ORDERED:

                               _____
                               Philip M. Halpern
                               United States District Judge